UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :   20 Cr. 400 (JSR)
        -v-                         :
                                    :   MEMORANDUM
JOSE MORELY CHOCRON,                :
                                    :
        Defendant.                  :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

Defendant Jose Morely Chocron was charged with conspiring with codefendants Isaac Schachtel and Alfredo Lichoa to launder the proceeds of bribes paid to Brazilian public officials. See Indictment, ECF No. 47. The defendant briefed several motions in advance of trial. See ECF No. 49. The Court denied, by order from the bench, Chocron's omnibus motion. This memorandum explains the reasons for the Court's decision.

## BACKGROUND

The single-count indictment charges Jose Morely Chocron, Isaac Schachtel, and Alfredo Lichoa with money laundering conspiracy in violation of 18 U.S.C. § 1956(a)(3)(B). Indictment, ECF No. 47, ¶¶ 1-2. The object of the alleged conspiracy was to launder bribes paid to Brazilian public officials. Id. at ¶ 2. The Complaint, which sets forth the conspiracy in more detail, alleges that Chocron offered money laundering and transmission services in interactions with two confidential sources and one undercover

1

agent. See Compl., ECF No. 1, at ¶ 4. The Complaint also alleges that Chocron facilitated transfers of purportedly ill-gotten funds from accounts listing Schachtel as the sender and that Lichoa also accepted funds to launder through a bank account used to make payments related to the purchase and sale of racehourses. See Compl., ECF No. 1, at ¶¶ 4, 7. The Complaint further alleges that Chocron met with an undercover agent and agreed to launder $250,000 in purported "corruption proceeds" in return for a 15% fee. Id. at ¶ 6. Chocron completed this transaction using a bank account provided by the undercover agent and located in the Southern District of New York. Id.

## DISCUSSION

Chocron makes ten motions, many of which are moot.

### I. Motion to Dismiss the Indictment

In his first motion, Chocron moves to dismiss the indictment for lack of venue on the ground that Chocron has never resided in or entered the Southern District of New York and that the "boilerplate" indictment fails to identify specific money laundering transactions occurring in this District.

In a conspiracy case, "venue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed.'" United States v. Royer, 549 F.3d 886, 896 (2d Cir. 2008) (quoting United States v. Naranjo, 14 F.3d 145, 147 (2d Cir.

2

1994)). To survive a motion to dismiss for lack of venue, the prosecution "need only allege that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information." United States v. Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010); see also United States v. Chalmers, 474 F. Supp. 2d 555, 574 (S.D.N.Y. 2007) (concluding that an allegation that a charged crime occurred "in the Southern District of New York and elsewhere" is sufficient to support venue at the pre-trial stage).

The indictment alleges that defendants conspired to commit money laundering "[f]rom at least in or about May 2019 through in or about February 2020, in the Southern District of New York and elsewhere." Indictment at ¶ 1. While the indictment's description of the alleged crime is spare, it sufficiently informs the defendant of the charge and, by including a date range, provides "enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." Id.

Further, when a defendant moves to dismiss an indictment, the allegations in the Complaint are relevant in assessing whether the defendant is on notice of the charges against him. See United States v. Walsh, 194 F.3d. 37, 35 (2d Cir. 1999). Though the Indictment does not allege specific money laundering transactions in New York, the Complaint does. The Complaint alleges that after Chocron met with an undercover agent on August 13, 2019, Chocron

3

agreed to launder $250,000 in purported corruption proceeds for that undercover agent in exchange for a 15% fee. Compl. at ¶ 6. The two bank accounts allegedly used to launder those funds were "a bank account purportedly belonging to a 'consulting' company based in Tampa, Florida" and an undercover agent-provided bank account established and held in the Southern District of New York. Id.

Finally, no rule prevents "boilerplate" repetition of statutory language. To the contrary, "[a]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).

Chocron also argues that the government improperly manufactured venue by opening a bank account in the district and agreeing with defendant to launder money through that account. An argument that the government has "manufactured" federal jurisdiction is "properly understood not as an independent defense, but as a subset of three possible defense theories": (1) entrapment, (2) violation of due process, and (3) failure to prove an element of the offense. See United States v. Wallace, 85 F.3d 1063, 1065-66 (2d Cir. 1996) (internal citations omitted) (dismissing a challenge to jurisdiction when the only connection

4

between the defendant and a federally insured bank was a bank account supplied by an undercover FBI agent).

The first "entrapment" theory is untenable because, according to allegations accepted as true at this stage, see United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985), Chocron had been laundering gambling and narcotics proceeds since at least January 2019. Compl. ¶ 4. The second "due process" theory is addressed and rejected below. Courts have rejected the third "unproven element" theory "when there is any link between the federal element and a voluntary, affirmative act of the defendant." Wallace, 85 F.3d at 1066. Because Chocron "himself committed the substantial jurisdictional act" of laundering funds through a Manhattan bank account, all elements of the offense have been met by the defendant's voluntary actions. See United States v. Law Tung Lam, 714 F.2d 209, 210-11 (2d Cir. 1983); see also, e.g., United States v. Al Kassar, 660 F.3d 108, 120 (2d Cir. 2011). Accordingly, the motion to dismiss for lack of venue is denied.

II. Motion to Dismiss for Violations of Due Process

The defense next argues that government agents engaged in outrageous conduct by taking advantage of Chocron's gambling addiction and desperate financial situation.

"To establish a due process violation [warranting dismissal of an indictment], a defendant must show that the

5

government's conduct is 'so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction.'" Al Kassar, 660 F.3d at 121 (2d Cir. 2011) (quoting United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997)). This is a high bar and must involve either coercion or physical force. Schmidt, 105 F.3d at 91; United States v. Bout, 731 F.3d 233, 239 (2d Cir. 2013).

First, accepting the charging documents as true for the purpose of the motion to dismiss, Chocron was involved in laundering narcotics and illegal gambling operation proceeds in or about January 2019, well before meeting the government's undercover agent in August 2019. Thus, the government did not coerce Chocron into laundering money—Chocron had already begun to do so. See United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980) (rejecting an "outrageous conduct" argument where defendants had "initiated the conspiracy prior to meeting the informant"). Second, a large monetary inducement is not tantamount to coercion in the due process violation context. See United States v. Meyers, 692 F.2d 823, 838 (2d Cir. 1982).

There is no assertion that government agents used physical force to obtain Chocron's participation in the alleged conspiracy. When a sting operation is "elaborate and prolonged, [but] there was no coercion or physical force," the defendant cannot "prevail on an outrageous government conduct charge." Bout, 731 F.3d at

6

239. The Court therefore denies the motion to dismiss the indictment on the ground that the government's conduct violated due process.

III. <u>Motion to Dismiss the Indictment for Failure to State an Offense</u>

Chocron also challenges the sufficiency of the indictment pursuant to Federal Rules of Criminal Procedure 7 and 12. "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>see also</u> <u>United States v. D'Amelio</u>, 683 F.3d 412, 418 (2d Cir. 2012). As discussed above with respect to venue, the indictment, though spare, recites the elements of the offense within parameters specific enough for Chocron to defend against double jeopardy in the future. Because the indictment "tracks the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," <u>Alfonso</u>, 143 F.3d at 776, the indictment is sufficient for pretrial purposes. Thus, the Court denies the motion to dismiss the indictment as insufficient.

IV. <u>Motion to Sever</u>

Chocron moves to sever his case from that of his codefendants Lichoa and Schachtel. Chocron argues that Lichoa and Schachtel were engaged in a separate conspiracy to launder bribes through Lichoa's horse-training business and contends that the jury would confuse this scheme with the alleged conspiracy between all defendants to launder bribes paid to Brazilian officials.

"[T]here is a preference in the federal system for providing defendants who are indicted together with joint trials," unless a joint trial would cause "such severe prejudice that [a] conviction may be said to be a miscarriage of justice." <u>United States v. Feyrer</u>, 333 F.3d 110, 114-15 (2d Cir. 2003). Severance is appropriate under Rule 14(a) when "a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 53 (1993).

The Indictment alleges that, whatever the laundering method, all defendants acted in concert to conceal the origin of Brazilian bribery proceeds. Indictment ¶ 2. The Complaint offers further detail, alleging that Schachtel was "a partner of Chocron's in the laundering of illicit proceeds" and stating that Schachtel reached out to Lichoa to expand the coconspirators' abilities to launder bribery proceeds. Compl. ¶ 4. Because the Indictment charges Chocron with participation in a common scheme, and the evidence

8

used to prosecute Chocron is likely to substantially overlap with the evidence used to prosecute Schachtel and Lichoa, a joint trial is appropriate. To the extent that juror confusion could arise, "it could be cured by jury instructions and by the careful presentation of evidence by competent counsel." See Feyrer, 333 F.3d at 114. As such, the Court denies the motion to sever.

V. Remaining Motions

Neither of Chocron's two codefendants, Lichoa and Schachtel, have made pretrial motions, and so Chocron's motion to join codefendant's motions is denied as moot. The Court is also satisfied by the Government's representations that it will produce any rough notes and reports, Brady material, Rule 404(b) evidence, and Rule 16 discovery well before trial. Accordingly, the Court denies Chocron's remaining motions.

CONCLUSION

For the foregoing reasons, the motion to dismiss the Information is DENIED. The Clerk of Court is instructed to close the motion at docket number 49.

SO ORDERED.

Dated: New York, NY
7/14, 2021

JED S. RAKOFF, U.S.D.J.

9